# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| GLORIA TADDEI, | : | Case No. 17-15877 (mdc) |
| | : | |
| Debtor. | : | |
| | : | |

## DEBTOR'S DISCLOSURE STATEMENT
## SUBMITTED PURSUANT TO 11 U.S.C. SECTION 1125

June 19, 2018

**NOTICE TO CREDITORS AND PARTIES IN INTEREST:**

**THIS DISCLOSURE STATEMENT IS BEING SUBMITTED TO ALL CREDITORS AND PARTIES IN INTEREST. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT YOUR DECISION TO ACCEPT OR REJECT THE AMENDED CHAPTER 11 PLAN FILED BY THE ABOVE-CAPTIONED DEBTOR DATED AS OF THE DATE HEREOF, AS IT MAY BE FURTHER MODIFIED OR AMENDED FROM TIME TO TIME. ALL CREDITORS AND PARTIES IN INTEREST ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.**

FLASTER GREENBERG, P.C.
Damien Nicholas Tancredi, Esquire
1835 Market Street
Suite 1050
Philadelphia, PA 19103
Tel: (215) 587-5675
Fax: (215) 279-9394

Gloria Taddei (the "Debtor"), submits as proponent, this Disclosure Statement (the "Disclosure Statement") in connection with her Chapter 11 Plan (the "Plan"), pursuant to Chapter 11 of the United States Bankruptcy Code (the "Code"). A copy of the Plan is being filed simultaneously herewith.

## I. INTRODUCTION

The Debtor filed a petition for relief under chapter 13 of the United States Bankruptcy Code on August 31, 2017 (the "Petition Date"). On January 4, 2018, the Debtor's case was converted to a case under chapter 11 of the Bankruptcy Code. On this date, the Debtor filed the Plan seeking to provide a basis for resolving outstanding claims against the Debtor through payment of claims by the Debtor's son, John Taddei. On that same date, the Debtor filed this Disclosure Statement as containing adequate information as required by the provisions of the Code.

## II. PRELIMINARY STATEMENT AND SOLICITATION

As a creditor or interest holder involved in the Debtor's bankruptcy case, you should take the time to vote on the proposed Plan, which, if confirmed, will affect your economic interest in the case. Before casting your ballot, it is important that you be properly informed about the nature of the case and the workings of the proposed Plan and its consequences. The Disclosure Statement has been approved by the United States Bankruptcy Court as containing adequate information to enable you to make an informed judgment about the Plan. The Debtor urges you to review the Disclosure Statement and the Plan, consult with your own legal counsel or other advisors if you think it is appropriate and, for the reasons which follow, vote in favor of the Plan.

The Plan will accomplish its objectives through the repayment of certain of the Debtor's obligations through funding provided to her by her son, John Taddei. The Debtor believes that creditors will receive a higher overall return under the provisions of the Plan than other alternatives, particularly liquidation of all of the Debtor's assets.

**III.    PURPOSE OF THE DISCLOSURE STATEMENT AND PROVISIONS FOR VOTING AND CONFIRMATION**

    A.    PURPOSE

The Debtor provides this Disclosure Statement, pursuant to the requirements of Section 1125 of the Code, in order to provide to the holders of all Claims against the Debtor adequate information about the Debtor and the Plan, so that they may make an informed judgment with respect to the merits of the Plan.

This Disclosure Statement does not purport to be a complete description of the Plan, the financial status of the Debtor, the applicable provisions of the Code, or other matters that may be deemed significant by certain creditors and parties-in-interest.  This Disclosure Statement is an attempt to set forth, in reasonable detail, information that will enable a creditor to make an informed judgment with respect to the Plan.  The Disclosure Statement necessarily involves a series of compromises between raw data, the legal language in documents or statutes, and the considerations of readability and usefulness.  For further information, you may desire to examine the Plan directly (a copy of which accompanies this Disclosure Statement), and/or consult with your legal and financial advisors.  The description of the Plan herein is provided only as a summary and it is recommended that all creditors and parties-in-interest review the Plan, the balance of this Disclosure Statement, and the other documents and information referenced herein, in order to obtain more complete information.  Approval by the Bankruptcy Court of the Disclosure Statement is not an approval of the Plan.

Except as set forth in this Disclosure Statement, no representations concerning the Debtor or her assets or the Plan are authorized, and any such representations are not to be relied upon in arriving at a decision with respect to the Plan.  Any representation made to secure the acceptance or rejection of the Plan other than as contained in this Disclosure Statement should be reported to

Debtor's counsel.

In accordance with United States Treasury Circular 230, be advised that: (a) any discussion of tax matters in this document is not tax advice and is not intended to be used, and cannot be used, for purposes of avoiding penalties imposed under the United States Internal Revenue Code; (b) such discussion is written in connection with the promotion or marketing of the transactions or matters addressed in this document; and (c) a taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

The information contained in this Disclosure Statement has been supplied by the Debtor. Based on the information made available, Debtor's counsel has no information to indicate that the information disclosed in this Disclosure Statement is inaccurate. While every effort has been made to provide the most accurate information available, neither the Debtor nor Debtor's counsel are able to state definitely that there is no inaccuracy in this Disclosure Statement or that future events may not render the information contained in this Disclosure Statement inaccurate. No known inaccuracies are included, however, much of the financial information contained herein consists of valuations, which may be complicated and uncertain.

Please be advised that the Debtor has attempted to provide only a general overview regarding her background and financial difficulties, and not to provide a detailed account of all events, actions, and circumstances which have contributed to those difficulties.

The terms and definitions contained in the Plan also apply to the Disclosure Statement, and Claimants are urged to read the Plan in its entirety in conjunction with the review of the Disclosure Statement.

    B.    VOTING PROVISIONS

        1.    <u>General</u>

Except for Claimants holding only Administrative claims, every holder of a Claim is

entitled to vote to accept or reject the Plan, provided that either: (a) its Claim has been scheduled by the Debtor and such Claim is not scheduled as a disputed, contingent or unliquidated claim; or (b) it has filed a timely Proof of Claim, unless its Claim has been disallowed for voting purposes by the Bankruptcy Court.  "Claim" is defined in the Plan as "... a claim against the Debtor within the meaning of Section 101(4) of the Code."  As such, all Creditors who hold a Claim against the Debtor, except as indicated below, may vote on the Plan by filling out the enclosed ballot and mailing it in the enclosed, self-addressed envelope to counsel for the Debtor.

2. Claimants Not Entitled to Vote

a. Administrative Claims

Claimants holding only Administrative Claims are not entitled to vote on the Plan because Section 1123(a)(1) of the Code does not require that such Claims be designated in a Class and because the Plan provides for the payment of such Claimants under terms which satisfy such Claimants pursuant to Sections 1129(a)(9)(A) and (C) of the Code.  Sections 1122(a) and 1123(a)(1) of the Code require that a Plan proponent designate Classes of Claims, other than Administrative Claims and Priority Tax Claims, and that each Class consist of substantially similar Claims.  Although they are not required to do so under the Code, the Debtor has elected to designate a Class of Priority Tax Claims and a Class of Administrative Claims.

b. Unimpaired Claims

Claimants holding Claims in a Class which is not impaired (as discussed below) are not entitled to vote on the Plan because pursuant to Section 1126(f) of the Code, a Class that is not impaired under the Plan, and each Claimant in such Class, is conclusively presumed to have accepted the Plan.  As a general matter, under Section 1124 of the Code, a Class of Claims is impaired unless the rights of the Claimants in such Class are not altered by the Plan (with exception of certain rights of Claimants to receive accelerated payment of their Claims and certain rights of Debtor to cure defaults) or unless the Plan provides, that, on the Effective Date, each Claimant in such Class shall receive, on account of its Claim, cash equal to the Allowed amount of such Claim.  Class 1 Claimants (as described below), therefore, are not entitled to vote

5

on the Plan.

      3.      <u>Claimants Entitled to Vote: Impaired Claims</u>

Claimants in Classes 2, 3 and 4 (as described below) are impaired under the Plan and Claimants in such Classes, therefore, are entitled to vote on the Plan.

      4.      <u>Acceptance of the Plan</u>

Please note that the Plan is deemed accepted by a Class of Creditors when it is approved by creditors who hold at least two-thirds of the dollar amount, and who comprise more than one-half in number of, the Allowed Claims of such Class that are held by Creditors and who in fact vote. An abstention by a Creditor will not count toward either acceptance or rejection of the Plan.

THE DEBTOR RECOMMENDS THAT EACH VOTER <u>ACCEPT</u> THE PLAN. IN ORDER FOR YOUR VOTE TO COUNT, YOUR BALLOT MUST BE COMPLETED AND RECEIVED AT THE ADDRESS STATED ON THE BALLOT (WHICH IS ALSO SET FORTH BELOW) ON OR BEFORE 5:00 p.m., _____, 2018.

Flaster Greenberg, P.C.<br>
Attn: Damien Nicholas Tancredi, Esquire<br>
1835 Market Street<br>
Suite 1050<br>
Philadelphia, PA 19103

Even though a Creditor may not choose to vote or may vote against the Plan, the Creditor will be bound by the terms and treatment set forth in the Plan if the Plan is accepted by the requisite majorities in each Class of Claimants and/or is confirmed by the Court. Allowance of a Claim for voting purposes does not necessarily mean that the Claim will be Allowed for purposes of distribution under the terms of the Plan. Any Claim to which an objection has been or shall be made will be Allowed for purposes of distribution only after determination by the Court. Such determination may be made after the Plan is confirmed

    C.    CONFIRMATION

      1.      <u>Objections</u>

Should you have an objection to Confirmation of the Plan, it must be filed, in writing, with the Bankruptcy Court and a copy caused to be received by counsel for the Debtor, on or before 5:00 p.m. on _____, 2018. A hearing to consider confirmation of the Plan will be held on _____, beginning at _____ before the Honorable Magedline D. Coleman.

2.  Confirmation by Acceptance

The Debtor is seeking Confirmation of the Plan under Section 1129(a) of the Code. Confirmation under Section 1129(a) is dependent upon a finding of the Bankruptcy Court that a number of requirements have been met. One of these requirements is that each Impaired Class of Claims must have accepted the Plan. Accordingly, the Plan cannot be confirmed under Section 1129(a) unless accepted by each Impaired Class of Claims.

3.  Confirmation Without Acceptance

While the Debtor intends to seek Confirmation of the Plan under Section 1129(a), the Debtor reserves the right to seek Confirmation of the Plan under Section 1129(b), notwithstanding non-acceptance by one or more Classes of Impaired Claims.

Under Section 1129(b)(1) of the Code, the Court may confirm the Plan even if it has not been accepted by one or more Impaired Classes of Claims, provided that the Plan does not discriminate unfairly and it is fair and equitable with respect to each Impaired Class of Claims that has not accepted the Plan.

In order for the Plan to be fair and equitable with respect to an Impaired Class of Secured Claims, Section 1129(b)(2)(A) of the Code requires that the Plan provide for each Claimant in such Class: (a) to receive payments over time which, in the aggregate, total at least the allowed amount of such Claimant's Claim, and which have a present value, as of the Effective Date of the Plan, at least equal to the value of such Claimant's interest in the Debtor's Assets encumbered by such Claimant's lien(s); and (b) shall retain such lien(s) in order to secure such payments.

In order for the Plan to be fair and equitable with respect to an Impaired Class of Unsecured Claims, Section 1129(b)(2)(B) of the Code requires that the Plan provide either:  (a)

7

that each Claimant in such Class shall receive on account of its Claim payments which have a present value, as of the Effective Date of the Plan, equal to the allowed amount of such Claim; or (b) that no Claimant or holder of an interest in the Debtor that is junior to the Claims of such impaired Class will receive or retain under the Plan on account of such junior Claim or interest any Property until the unsecured creditors are paid in full, except, however, in an individual case, (a) the Debtor may retain his Assets that are included in the estate as long as the requirements of Section 1129(a)(14) of the Code, relating to domestic support obligations, are met and (b) where the holder of an allowed unsecured claim objects to the Plan, (A) the value, as of the Effective Date, of the property to be distributed under the Plan on account of such claim is not less than the amount of such claim; or (B) the value of the property to be distributed under the Plan is not less than the Debtor's projected disposable income for the five-year period commencing on the Effective Date.

While the Debtor intends to seek confirmation of the Plan based on acceptance by each Impaired Class of Claims, if one or more such Classes do not accept the Plan, the Debtor intends to seek confirmation of the Plan under Section 1129(b) of the Code and believes that the Plan satisfies the requirements of such Section.

## IV.   INQUIRIES

Inquiries by Creditors may be directed to counsel for the Debtor, Damien Nicholas Tancredi, Flaster Greenberg, P.C., 1835 Market Street, Suite 1050, Philadelphia, PA 19103, Philadelphia, PA 19103; Tel: (215) 587-5675; Fax: (215) 279-9394; email: damien.tancredi@flastergreenberg.com.

## V.    THE DEBTOR

The Debtor is a resident of the Commonwealth of Pennsylvania. She is an 83 year retired woman who was most recently employed as a hair-stylist. Currently the Debtor's income is approximately $1200 per month, which is supplemented on an as-needed basis by John Taddei.

The Debtor owns two pieces of real property, the "PA Property" is located at 33 Fairlamb

8

Ave., Haverford, PA 19083. The PA Property is worth approximately $285,000.00 and is encumbered by a reverse mortgage held by Nationstar Mortgage, LLC d/b/a Champion Mortgage Co. ("Champion") in the amount of $295,060.80. The Champion mortgage is delinquent only in that taxes and other charges have not been paid by the Debtor. The amount necessary to cure any arrears (which the Debtor plans to cure), as of the Petition Date, is $16,491.76. This mortgage was recorded on April 9, 2008 and is senior to all other liens on the PA Property. On or about October 31, 2012, a judgment in the amount of $38,737.17 held by Sunbridge Capital, Inc. ("Sunbridge") was transferred to the Court of Common Pleas of Delaware County. The Sunbridge judgement is junior to the Champion lien and is an unsecured claim. On the Petition Date, Sunbridge's claim totaled $63,119.02 when accounting for post-judgment interest.

The Debtor also owns the "NJ Property" located at 14 South Madison Avenue, Margate, NJ 08402. The NJ Property is worth $433,846.00 and is encumbered by a senior lien held by HSBC Bank USA National Association ("HSBC"). HSBC filed a secured claim in the amount of $949,288.00.

Aside from the PA Property and NJ Property, the Debtor owns no other non-exempt assets. The Debtor does not have any disposable income. The Debtor's plan will be paid entirely through contributions by the Debtor's son, John Taddei. Mr. Taddei possesses sufficient assets through his business ventures to pay amount set forth in the Plan pursuant to its terms.

### VI. THE CHAPTER 11 PLAN

#### A. SUMMARY OF THE PLAN

The Plan provides for specified distributions to the various Classes of Claims against the Debtor. The Debtor believes the Plan provides consideration to all Classes of creditors which reflects an appropriate resolution of their claims against the Debtor. The Debtor also believes the Plan will provide each Class of creditors with consideration of equal or greater value than that

9

Case 17-15877-mdc    Doc 56    Filed 06/19/18    Entered 06/19/18 17:15:35    Desc Main
Document      Page 10 of 17

which the Class members would receive upon liquidation of the Debtor's assets. The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of holders of Claims that do not vote to accept the Plan but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

The provisions below summarize the Plan. Reference should be made to the Plan for a full statement of its terms. The following summary is qualified in its entirety by reference to the Plan.

PLEASE NOTE THAT THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN. THIS DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN BY EACH HOLDER OF A CLAIM ENTITLED TO VOTE THEREON; IT IS INTENDED ONLY TO AID AND SUPPLEMENT SUCH REVIEW. HOLDERS OF CLAIMS ARE URGED TO REVIEW THE DETAILED DESCRIPTION OF THE PLAN SET FORTH HEREIN AND THE PLAN ITSELF FOR A FULL UNDERSTANDING OF THE PLAN. THIS DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN.

In the Debtor's opinion, the Plan as proposed provides maximum value to her Creditors. The Debtor believes that the Plan will enable Claimants to receive a greater recovery than would be possible under other alternatives and will provide the only realistic available means for funding any distribution to unsecured creditors.

The Plan divides Claimants into 4 Classes. The nature of the Claims within each class and their treatment under the Plan are summarized below. It should be noted, however, that the following summary of the Plan does not propose to be a full analysis of its provisions and should not be relied on as such. All Claimants are encouraged to review the Plan in its entirety in conjunction with the review of the Disclosure Statement and to consult with counsel, as necessary.

Claimants should note that the amount to be paid on account of Claims under the various

provisions of the Plan will be calculated on the basis of the allowed amount of the Claims, determined in accordance with the Code. Claimants that were not listed in the Debtor's schedules as liquidated, undisputed and not contingent and who have not filed Proofs of Claim within the times set by the Court will receive no distribution. Those Claimants who are listed on the Debtor's schedules as liquidated, undisputed and not contingent will be paid based on the amount set forth in the schedules, unless the Claimant has filed a Proof of Claim for an amount different from that amount listed on the schedules. Those Claimants who have filed Proofs of Claims will be paid based on the amounts set forth in a properly filed Proof of Claim, unless the Debtor objects to the Proof of Claim. Claimants who have filed Proofs of Claim to which the Debtor objects will receive payment based on such amount as the Court determines to be allowed, and distribution on account of such Claims will be effected in the majority of instances, thirty (30) days after the entry of the Final Order allowing such disputed claim, or on the date for payment set forth in the Plan, whichever is later.

It should also be noted that the actual distribution to a particular Claimant may be less than that proposed under the Plan, if the Claimant agrees to accept such different treatment.

B.    CLASSIFICATION AND TREATMENT OF CLAIMS

1.    <u>Administrative and Priority Non-Tax Claims (Class 1)</u>.

The principal provisions relating to the treatment of Administrative and Priority Non-Tax Claims (referred to as Class 1) are contained in Sections 2.1 and 3.1 of the Plan. All creditors holding an Allowed Administrative Claim arising prior to the Effective Date shall be paid in full upon the Effective Date, or upon the entry of a Final Order allowing such Claim, whichever is later, except as follows: (a) to the extent that all trade and service debts and obligations incurred by the Debtor in the normal course during the Chapter 11 proceeding shall be paid when due; (b) All fees required to be paid pursuant to 28 U.S.C. §1930(a)(6) will accrue and be timely paid until the case is closed, dismissed or converted to another chapter of the Bankruptcy Code and all

11

such fees owed on or before the Effective Date of this Plan shall be paid on the Effective Date; and (c) to the extent that any Class 1 Claimant agrees to a less favorable treatment. The category of Administrative Claims includes professional fees, such as the claims of Flaster/Greenberg, P.C., the Debtor's counsel, other professionals as approved by the Court.

        2.        <u>Secured Claim of HSBC Bank USA National Association (Class 2)</u>

The principal provisions relating to the treatment of the Allowed Secured Claim of HSBC (referred to as Class 2) are contained in Sections 2.2 and 3.2 of the Plan. Class 3 is impaired. HSBC filed a secured claim in the amount of $949,288.00. HSBC holds a first priority lien on the NJ Property that is undersecured. As described in the Plan, HSBC shall retain its mortgage lien on the NJ Property until its Allowed Secured Claim is paid in full. The Allowed Class 2 Secured Claim of HSBC shall be modified to equal the current fair market value of the NJ Property in the amount of $433,846.00. Interest shall accrue on the Allowed Class 2 Secured Claim, and shall be added to the balance of the Allowed Class 2 Secured Claim, which amount shall be paid in full, commencing on the date which is thirty (30) days after the Effective Date, in three hundred sixty (360) equal monthly installments of principal and interest, at a fixed rate of interest of five and nine tenths percent per annum (5.9%). Except as otherwise stated herein, the Debtor shall comply with all other terms and conditions set forth in the Note evidencing the Debtor's obligations to HSBC. Any Deficiency Claim of HSBC shall be waived; provided, however, that in the event of a default of payment hereunder, HSBC may, upon thirty (30) days' notice, seek to pursue payment of the entire amount of its Claim, as filed.

        4.        <u>Secured Claim of Nationstar LLC d/b/a Champion Mortgage Company (Class 3)</u>.

The principal provisions relating to the treatment of the Allowed Secured Claim of

12

Secured Claim of Champion Mortgage (referred to as Class 3) are contained in Sections 2.3 and 3.3 of the Plan. Class 3 is impaired. Champion filed a Secured Claim in this Case in the amount of $295,060.80 as a result of a reverse mortgage it provided to the Debtor. Of that amount, $16,491.76 is in arrears (the "Arrears"). As described in the Plan, Champion shall retain its lien on the PA Property until its Secured Claim is paid in full under the terms of the Champion Mortgage. On the Effective Date, the Debtor will reinstate payments as permitted by the Open-End Mortgage and will commence making payments of arrears in the amount of $16,491.76 due to Champion. Payments shall commence on the date which is thirty (30) days after the Effective Date. Interest shall accrue on the Arrears, and shall be added to the balance of the Allowed Class 3 Secured Claim, which amount shall be paid in full, in three hundred sixty (360) equal monthly installments of principal and interest, at a fixed rate of interest of two and two-tenths percent per annum (2.20%).

     5.     <u>General, Unsecured Claims (Class 4)</u>.

The principal provisions relating to the treatment of the Allowed General, Unsecured Claims (referred to as Class 4) are contained in Sections 2.4 and 3.4 of the Plan. Class 4 is impaired. The treatment and consideration to be received by holders of Class 4 Allowed Claims shall be in full settlement, satisfaction, release and discharge of their respective Claims. Class 4 consists of the general unsecured claims of Sunbridge Capital, Inc. in the amount of $63,119.02, which is an unsecured deficiency claim related to a judgment lien placed on the PA Property;[1] and PECO Energy Company in the amount of $402.68, as set forth in Proof of Claim # 4. Each holder of a Class 4 Claim shall be paid a pro-rata percentage of $10,000.00, not to exceed the total value of any Class Four Claim, in eight equal yearly payments to Class 4 Claimants totaling

---

[1] The PA Property has an approximately value of $285,316.66. The secured claim of Nationstar LLC d/b/a Champion Mortgage Company in the amount of $295,060.80 is senior in priority to Sunbridge Capital, Inc. As a

13

$1,250.00, commencing on the first of the month following the Effective Date.

## VII.   MEANS FOR EFFECTUATION OF THE PLAN

### A.   PLAN FUNDING

1. <u>Generally.</u>  The funds necessary for the implementation of the Plan shall be in the form of a contribution from John Taddei to the Debtor in an amount necessary to make each required payment under the Plan.  John Taddei has sufficient income through his business ventures necessary to make all payments under the Plan.

2. <u>Causes of Action</u>. The Debtor shall have the exclusive right, but shall be under no obligation, to pursue Causes of Action allowed under applicable law or under the Bankruptcy Code.  The Debtor is not aware of any Causes of Action.  So, the use of proceeds from Causes of Action is only speculative at this time.

3. <u>Post-Effective Date Fees and Expenses</u>. From and after the Effective Date, the Reorganized Debtor shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

### B.   DEBTOR'S ASSETS

On and after the Effective Date, all assets of the Debtor's estate shall vest in the Reorganized Debtor free and clear of any and all liens, mortgages, pledges, security interests, restrictions, prior assignments, liabilities, obligations, encumbrances, charges and claims of every kind whatsoever, unless such lien is retained pursuant to the Plan.

### D.   OBJECTIONS TO CLAIMS

The Debtor and the Reorganized Debtor shall be the only parties authorized to object to

---

result, Sunbridge Capital, Inc.'s claim is unsecured.

Claims.

## VIII. ALTERNATIVES TO THE PLAN AND LIQUIDATION ANALYSIS

The Plan is proposed by the Debtor in the good faith belief that more will be realized by the Claimants through the implementation of the Plan than would be the case if the Debtor's Assets were liquidated under Chapter 7 of the Code. The amount allocated to fund the payment of Creditors represents an amount in excess of the fair market value of the Debtor's Assets.

Liquidation of the Debtor's Assets is the likely result if the Plan is not approved. The cash generated from the implementation of the Plan would be reduced by the costs and expenses of the liquidation and by additional administrative and priority claims that may result from the use of Chapter 7 for the purpose of liquidation. These costs would include fees payable to a trustee in bankruptcy, as well as those which might be payable to additional attorneys and professionals which the trustee may seek to engage. Furthermore, liquidation of the Debtor's Assets could certainly result in no payment to the holders of Class 4 Unsecured Claims since the value of the liens on the PA Property and the NJ Property is greater than the value of each property. A liquidation analysis is attached to the Plan as Exhibit "A."

The Debtor therefore believes that the distribution to Creditors pursuant to the Plan would yield a higher dividend to the holders of Unsecured Claims than if the case were one under Chapter 7 of the Code. Thus, the best interests of the Debtor and her creditors would be served by acceptance of the Plan.

## IX. TAX CONSEQUENCES

The Debtor believes that if the Plan is confirmed by the Bankruptcy Court, there may be tax consequences that could affect individual creditors. You are urged to consult with your tax advisors regarding such implications and how they may affect you.

**X.    SUMMARY OF MISCELLANEOUS PROVISIONS**

    A.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor is not a party to any executory contract or leases at this time.

    B.    MODIFICATION OF THE PLAN

At any time before the Confirmation Date, the Debtor may modify this Plan, but may not modify the Plan so that the Plan, as modified, fails to meet the requirements of Sections 1122 and 1123 of the Code. The Plan as modified under this Section becomes the Plan only if the Court, after notice and a hearing, confirms such Amended Plan, as modified, under Section 1129 of the Code. After the Confirmation Date, the Debtor may, with the approval of the Court, and as long as it does not materially or adversely affect the interest of Claimants, remedy any defect or omission, or reconcile any such inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry of the purposes, intent and effect of the Plan.

    C.    BANKRUPTCY COURT JURISDICTION

As more specifically set forth in Article XI of the Plan, the United States Bankruptcy Court for the Eastern District of Pennsylvania shall retain jurisdiction after the Plan has been confirmed.

    D.    OBJECTIONS TO CLAIMS

The Plan provides that within thirty (30) days after the Effective Date, objections to Claims may be filed with the Court by the Debtor. Any such objection shall be served upon the United States Trustee and the Claimant holding the Claim to which objection is made. Any objection not timely filed shall be deemed waived.

    E.    DISCHARGE

The Plan also provides that upon completion of all payments due under the Plan, the Debtor, and her respective heirs, successors and assigns shall be discharged and released of all Claims arising prior to the Effective Date other than Claims arising under or set forth in this Plan. Pursuant to Section 524(e) of the Code, nothing in the Plan shall alter the legal, equitable and contractual rights that holder of any Claim may have or has against any co-debtor, guarantor

or other person.

                                    FLASTER GREENBERG, P.C.

Dated: June 19, 2018          By:    */s/ Damien Nicholas Tancredi*

                                    Damien Nicholas Tancredi, Esquire
                                    1835 Market Street
                                    Suite 1050
                                    Philadelphia, PA 19103
                                    Tel: (215) 587-5675
                                    Attorneys for the Debtor